IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| AMERICAN EAGLE OUTFITTERS, INC. and RETAIL ROYALTY COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>HAMRICK'S, INC., EYAL ALLEN DAHAN, individually, CAVALIER CLOSEOUTS, INC., d/b/a CAVALIER SPORTSWEAR, DRNY TRADING, INC., CELIA MERCURIO, individually, JAYLYN SALES, INC., DANA GILSON, individually, DAVID W. CORPORATION, d/b/a DEALS, DAVID WEISMAN, individually and d/b/a DEALS, and JOAN BERLINER, individually and d/b/a DEALS or SWEET DEALS,<br><br>Defendants. | Case No. _____<br><br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiffs American Eagle Outfitters, Inc. and Retail Royalty Company (collectively, "AEO" or "Plaintiffs") complain against Defendants Hamrick's, Inc., Eyal Allen Dahan, individually and doing business as "Cavalier" or "Cavalier Sportswear," Cavalier Closeouts, Inc., doing business as "Cavalier" or "Cavalier Sportswear," DRNY Trading, Inc., Celia Mercurio, individually, Jaylyn Sales, Inc., Dana Gilson, individually, David W. Corporation, doing business as "Deals," David Weisman, individually and doing business as "Deals," and Joan Berliner, individually and doing business as "Deals" or "Sweet Deals" (collectively "Defendants"), as follows:

## NATURE OF THE ACTION

1.     This is an action for trademark infringement, trademark counterfeiting, false designation of origin, and trademark dilution under the Lanham Act (15 U.S.C. § 1051 *et seq.*); and for copyright infringement under the Copyright Act (17 U.S.C. § 101 *et seq.*).

2.      AEO and its predecessors in interest have created a highly successful lifestyle brand of retail stores, apparel, and accessories under the well-known AMERICAN EAGLE OUTFITTERS, AMERICAN EAGLE, and AEO family of trademarks, and AEO's copyrighted Flying Eagle Design.  AEO's trademarks, copyrights, and other intellectual property rights are associated exclusively with Plaintiffs' AMERICAN EAGLE OUTFITTERS® Brand.

3.      As set forth more fully herein, Defendants have engaged in the trafficking and sale of counterfeit or infringing goods in violation of federal law, which has resulted in damage to Plaintiffs, lost sales, damage to the value of Plaintiffs' trademark and copyright interests, and which has unjustly enriched Defendants through wrongful profits accruing from the sales of such counterfeit or infringing goods.

4.      Defendants have sold thousands of pieces of unauthorized apparel bearing copies of AEO's well-known federally registered trademarks and copyrighted designs ("Accused Products"). Defendants' Accused Products are counterfeit or infringing copies of genuine AEO apparel are inferior in quality but substantially identical in appearance to AEO's genuine products.

5.      Defendants' sales of thousands of Accused Products have resulted in consumer confusion and have tarnished AEO's famous marks.

6.      The Accused Products are not genuine goods that were ever authorized for sale by AEO, and the Accused Products are materially different from AEO's authorized goods and were not subject to AEO's product integrity standards and quality control procedures.

7.      All of Defendants' conduct has occurred without AEO's authorization or consent.

8.      Upon information and belief, Defendants are willfully violating AEO's intellectual property rights through the sale of counterfeit goods in a deliberate effort to trade on AEO's reputation and substantial goodwill. Defendants' actions are causing irreparable harm to AEO and

the public by creating consumer confusion, by tarnishing and diluting AEO's famous trademarks, and by infringing AEO's trademark and copyright interests.

## THE PARTIES

9.    Plaintiffs American Eagle Outfitters, Inc. is a Delaware corporation with a principal place of business at 77 Hot Metal Street, Pittsburgh, Pennsylvania 15203.

10.    Plaintiffs Retail Royalty Company is a Nevada Corporation with a principal place of business at 101 Convention Center Drive, Las Vegas, Nevada 89101.

11.    Upon information and belief, Defendant Hamrick's Inc. ("Hamrick's") is a South Carolina corporation with places of business at 742 Peachoid Rd., Gaffney, South Carolina 29341.

12.    Upon information and belief, Eyal Allen Dahan d/b/a "Cavalier" or "Cavalier Sportswear," ("Dahan") is an individual resident in the State of California, with a business address of 431 East 16th Street, Los Angeles, California 90015.

13.    Upon information and belief, Defendant Cavalier Closeouts, Inc., d/b/a Cavalier Sportswear ("Cavalier") is a California corporation with a principal place of business at 431 East 16th Street, Los Angeles, California, 90015.

14.    Upon information and belief, Celia Mercurio ("Mercurio") is an individual resident in the State of New York, with a business address of 1412 Broadway, New York, New York, 10018.

15.    Upon information and belief, Defendant DRNY Trading, Inc. ("DRNY") is a New York corporation with a principal place of business at 1412 Broadway, New York, New York, 10018.

16.    Upon information and belief, David W. Corporation d/b/a Deals ("Deals") is a Massachusetts corporation with a registered office of 80 Freeman Street, Norton, Massachusetts 02766.

17.     Upon information and belief, David Weisman d/b/a Deals ("Weisman") is an individual resident in the State of Rhode Island, with a business address of at 640 Winter Street, Woonsocket, Rhode Island 02895.

18.     Upon information and belief, Joan Berliner ("Berliner") is an individual resident in the State of Massachusetts, with a business address of 49 Fay Lane, Needham, Massachusetts 02494.

19.     Upon information and belief, Dana Gilson ("Gilson") is an individual resident in the State of New York, with a business address of 19 W. 34th St, Suite 606, New York, New York 10001.

20.     Upon information and belief, Jaylyn Deals, Inc. is a Pennsylvania corporation, with a principal place of business at 19 West 34th Street, Suite 606, New York, New York 10001.

## JURISDICTION AND VENUE

21.     This action arises under the Lanham Act, Title 15 of the U.S. Code, § 1051 *et seq.*, and under the Copyright Act, Title 17 of the U.S. Code, § 101 *et seq.* Thus, jurisdiction over the parties and subject matter of this action is proper in this Court pursuant to 15 U.S.C. § 1121 (actions arising under the Lanham Act), 28 U.S.C. § 1331 (actions arising under the laws of the United States), and 28 U.S.C. § 1338 (actions arising under an Act of Congress relating to trademarks and copyrights).

22.     This Court has personal jurisdiction over the Defendants because they have purposefully directed their unlawful and damaging commercial activity into the State of South Carolina and into this judicial district, and because Defendants unlawful commercial activity has damaged Plaintiffs in this judicial district.

23.     This Court has personal jurisdiction over Hamrick's in that Hamrick's is a corporate domiciliary of this state and because Hamrick's has conducted its tortious and infringing commercial activity in South Carolina and in this judicial district, by selling the Accused Products in its retail stores, where such Accused Products were subsequently purchased by South Carolina consumers.

Hamrick's sale, distribution, and shipment for sale into this judicial district have caused damage to Plaintiffs that arises in this judicial district.

24.     This Court has personal jurisdiction over Dahan and Cavalier, under at least S.C. Code Ann. § 36-2-803(1) in that, upon information and belief, Dahan and Cavalier have offered for sale and have sold Accused Products into this state, and have shipped or caused to be shipped Accused Products to Hamrick's in this judicial district with the reasonable expectation that Hamrick's would resell the Accused Products here. The sale, distribution, and shipment for sale of Accused Products into this judicial district by Dahan and Cavalier have caused damage to Plaintiffs that arises in this judicial district.

25.     This Court has personal jurisdiction over DRNY and Mercurio, under at least S.C. Code Ann. § 36-2-803(1) in that, upon information and belief, DRNY and Mercurio have offered for sale and have sold Accused Products into this state, and have shipped or caused to be shipped Accused Products to Hamrick's in this judicial district with the reasonable expectation that Hamrick's would resell the Accused Products here. The sale, distribution, and shipment for sale of Accused Products into this judicial district by DRNY and Mercurio have caused damage to Plaintiffs that arises in this judicial district.

26.     This Court has personal jurisdiction over Jaylyn and Gilson, under at least S.C. Code Ann. § 36-2-803(1) in that, upon information and belief, Jaylyn and Gilson have offered for sale and have sold Accused Products into this state, and have shipped or caused to be caused to be shipped Accused Products to Hamrick's in this judicial district with the reasonable expectation that Hamrick's would resell the Accused Products here. The sale, distribution, and shipment for sale of Accused Products into this judicial district by Jaylyn and Gilson have caused damage to Plaintiffs that arises in this judicial district.

27.     This Court has personal jurisdiction over Deals, Weisman and Berliner, under at least S.C. Code Ann. § 36-2-803(1) in that, upon information and belief, Deals, Weisman and Berliner have offered for sale and have sold Accused Products into this state, and have shipped or caused to be shipped the Accused Products to Hamrick's in this judicial district with the reasonable expectation that Hamrick's would resell the Accused Products here. The sale, distribution, and shipment for sale of Accused Products into this judicial district by Deals, Weisman and Berliner have caused damage to Plaintiffs that arises in this judicial district.

28.     Upon information and belief, Dahan acted as agent for or on behalf of Cavalier, and in doing so Dahan personally aided, abetted, participated in, authorized and/or had the ability and right to supervise, direct, and control the tortious and infringing activities of Cavalier as alleged herein, and is therefore personally and individually responsible for the tortious and infringing conduct alleged herein.

29.     Upon information and belief, Mercurio acted as agent for or on behalf of DRNY, and in doing so Mercurio personally aided, abetted, participated in, authorized and/or had the ability and right to supervise, direct, and control the tortious and infringing activities of DRNY as alleged herein, and is therefore personally and individually responsible for the tortious and infringing conduct alleged herein.

30.     Upon information and belief, Deals, Weisman and Berliner acted as agent for or on behalf of Deals, and in doing so Deals, Weisman and Berliner personally aided, abetted, participated in, authorized and/or had the ability and right to supervise, direct, and control the tortious and infringing activities of Deals as alleged herein, and are therefore personally and individually responsible for the tortious and infringing conduct alleged herein.

31.     Upon information and belief, Gilson acted as agent for or on behalf of Jaylyn, and in doing so Gilson personally aided, abetted, participated in, authorized and/or had the ability and right

to supervise, direct, and control the tortious and infringing activities of Jaylyn as alleged herein, and is therefore personally and individually responsible for the tortious and infringing conduct alleged herein.

32.     Upon information and belief, Defendants have purposefully advertised, sold and distributed thousands of Accused Products (i) to Hamrick's in South Carolina for sale in Hamrick's retail stores including it stores in South Carolina, and (ii) into the stream of commerce in the United States with the reasonable belief and expectation that such products would periodically and regularly flow into South Carolina.

## FACTUAL ALLEGATIONS

I.     **PLAINTIFFS' BUSINESS INTERESTS AND INTELLECTUAL PROPERTY RIGHTS**

    A.     **The AMERICAN EAGLE OUTFITTERS® Brand**

33.     AEO designs, markets, and sells high-quality and style-forward clothing, accessories, and footwear, among other products, to consumers under the trademarks AMERICAN EAGLE OUTFITTERS, AMERICAN EAGLE, AE, and the copyrighted Flying Eagle Design. (Collectively, these marks are referred to as the "AEO Marks.")

34.     Over the past thirty-three years, AEO has built one of the most popular and highly respected youth-oriented lifestyle brands. AEO is also commonly referred to and known by the public and the media as "AE" and "AMERICAN EAGLE."

35.     AEO sells its well-designed, high quality merchandise at its own AMERICAN EAGLE OUTFITTERS retail stores and on its e-commerce website www.ae.com.  AEO opened its first AMERICAN EAGLE OUTFITTERS retail store in the United States in 1977, and now operates hundreds of retail stores throughout the United States.

36.     Since at least as early as 1999, AEO has operated its e-commerce website www.ae.com, which reinforces the branding of AEO's stores and marketing materials.  Through this

website, AEO offers the merchandise available in its stores, as well as additional sizes and styles, and other special features such as AEO news, music, webcasts, video clips, and photographic slide shows, thereby deepening AEO's relationship with its customer base.

37.    AEO has spent very significant sums of dollars promoting its unique, comprehensive, lifestyle brand under the AEO Marks.

38.    AEO has advertised its products bearing the AEO Marks on national network, cable, and spot (local) television; in print media; and through outdoor media such as billboards, bus sides, bus shelters, and subway-cars; and through in-store advertising.

39.    AEO also advertises the AEO Marks on the Internet in connection with its website (www.ae.com), Facebook page (www.facebook.com/americaneagle), and Twitter feed (www.twitter.com/american_eagle), and it makes extensive use of sweepstakes, e-mail blasts, and proprietary content such as music, videos, and slide-shows to draw its target consumers to these sites.  AEO sponsors promotional events across the United States to increase the public's awareness of the AEO Marks and AEO's products.

40.    The fame of the AEO Marks and success of AEO is evident from popular press reports and brand ranking publications, as well as by the degree of recognition that the AEO Marks possess among consumers throughout the United States.

41.    The popularity of the AMERICAN EAGLE OUTFITTERS® Brand has translated into retail sales of billions of dollars per year in recent years.

42.    AEO's branding strategy emphasizes the authenticity and high quality of AEO's privately branded merchandise.  AEO exercises strict quality control over the production and distribution of its apparel, accessories, and other products.

**B.      The AEO Trademarks and AEO's Federal Trademark Registrations**

43.     Due to AEO's long and continuous use of the AEO Marks in connection with its retail stores, clothing, footwear, accessories and other products and services, as well as the excellence of its products, the AEO Marks are widely recognized by the public as indicators of the source of AEO's goods and services.

44.     As a result of AEO's extensive use and promotion of its lifestyle brand, AEO has built and now owns enormously valuable goodwill symbolized by the AEO Marks.

45.     In recognition of AEO's extensive goodwill and exclusive use in commerce of the AEO Marks, the United States Patent & Trademark Office ("PTO") has granted various federal trademark and service mark registrations to AEO.

46.     Retail Royalty Company owns and licenses to American Eagle Outfitters, Inc., *inter alia*, numerous U.S. trademark registrations for the marks AMERICAN EAGLE OUTFITTERS, AMERICAN EAGLE, AE, AEO and the Flying Eagle Design Mark used in connection with apparel, clothing, accessories, footwear, and retail and online services, relevant aspects of which are set forth in the table below:

| Registration Number | Trademark Image | Goods & Services | Registration Date |
|---|---|---|---|
| 2,086,693 | **AMERICAN EAGLE OUTFITTERS** | Clothing; namely, outerwear; namely, coats, vests, parkas, and anoraks, pants, jeans, shorts, sweaters, shirts, underwear, neckwear, headwear, belts, hosiery, skirts, jackets, blazers, footwear, fleecewear, namely, fleece sweatshirts and fleece jackets | Aug. 12, 1997 |
| 1,877,686 | **AEO** | Shirts, shorts, footwear, headwear, t-shirts, and pants. | Feb. 7, 1995 |
| 3,797,646 | | Clothing and accessories, namely, blazers, vests, sweaters, turtleneck sweaters, skirts, pants, jeans, shorts, shirts, t-shirts, blouses, polo shirts, rugby shirts, sweatshirts, sweatpants; . . . outerwear, namely, jackets, vests, coats, pea coats, gloves, scarves; belts; and footwear. | Nov. 16, 2010 |

| Registration Number | Trademark Image | Goods & Services | Registration Date |
|---|---|---|---|
| |  | Retail store services, computerized online retail store services, and phone order services all featuring a wide range of goods including wearing apparel and clothing accessories, namely, clothing, headwear and footwear. | |
| 2,216,789 | **AE** | Shirts, t-shirts, headwear, pants, and outerwear, namely coats, anoraks, vests and jackets. | Jan. 12, 1999 |
| 2,574,009 | **AE** | Men's, women's and children's apparel, namely, sweaters, shirts, t-shirts, sweatshirts, sweatpants, shorts, swimsuits; outerwear, namely, parkas, jackets, vests; headwear, namely, hats, caps; pants, jeans, and belts. | May 28, 2002 |
| 2,930,147 | **AE** | Retail store services, mail order services, catalog sales services, and electronic retail store services using a global computer and/or communications network, all in the field of clothing, clothing accessories, dormwear, underwear, camisoles, lingerie, pajamas and nightgowns, sweat pants, sweatshirts, warm-up pants and jackets, swimwear, outerwear, coats, vests, parkas, anoraks, jackets, pants, jeans, shorts, sweaters, shirts, neckwear, skirts, blouses, ski wear, snowboarding wear, footwear, hosiery, socks, headwear, hats, caps, scarves, etc. | Mar. 8, 2005 |
| 3,033,841 | **AMERICAN EAGLE** | Clothing and clothing accessories, excluding footwear, namely, coats; parkas; jackets; pants; jeans; denim jeans; shirts, including long-sleeved and short-sleeved t-shirts and woven shirts; and fleece sweatshirts. | Dec. 27, 2005 |
| 3,545,443 | **AMERICAN EAGLE** | Clothing and clothing accessories, namely, clothing belts, jeans, miniskirts, pants, shirts, knit polo shirts, sweatshirts, short, boxer shorts, short-sleeved t-shirts, tops, underwear, headwear, namely, hats. | Dec. 9, 2008 |
| 3,636,963 | **AMERICAN EAGLE** | Wearing apparel, clothing, and clothing accessories, namely, bottoms, loungewear, sweaters, swimwear, visors, and caps. | June 9, 2009 |
| 3,797,646 | **AMERICAN EAGLE** | Retail store services, and computerized retail store services all featuring wearing apparel, clothing, clothing accessories, headwear, perfume and fragrances, body soaps and cleansers, sunglasses and jewelry. | June 1, 2010 |

47.     All of the foregoing registrations are valid, subsisting, unrevoked, un-cancelled and enforceable, and in full force and effect.  Attached to this complaint as **Exhibit A** are true and correct copies of printouts from the United States Patent and Trademark Office ("USPTO") website evidencing Plaintiff Retail Royalty Company's ownership of these trademarks.

48.     The registration of the AEO Marks constitutes prima facie evidence of the validity of the AEO Marks and of AEO's exclusive right to use the AEO Marks in connection with the goods identified therein and other commercial goods.

49.     Eight of the ten registrations referenced herein are incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065.  The incontestability of these marks constitutes conclusive evidence of the validity of the registered mark and of the registration of the mark, of Plaintiff Retail Royalty Company's ownership of the mark and the exclusive right to use the registered mark in commerce as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

50.     The registration of the AEO Marks also provides notice to Defendants of AEO's ownership of and exclusive rights in and to the AEO Marks.

**C.     AEO's Copyright In The Flying Eagle Design**

51.     In addition to the AEO Marks, AEO owns United States Copyright Registration No. VA-1-622-340 for the "Flying Eagle Design."  A true and correct copy of this copyright registration is annexed as **Exhibit B**.

52.     The Flying Eagle Design consists of a unique and iconic silhouette drawing of an eagle in mid-flight, which was created by AEO and is used exclusively in connection with AEO's business.

53.     The Flying Eagle Design was created and published by AEO in 2003 and was registered with the United States Copyright Office in 2007.

54.     The Flying Eagle Design adorns a variety of clothing, apparel and other items which are sold by AEO, and is also used in AEO's tags, labels and markings which designate genuine AEO products.

## II.     DEFENDANTS' INFRINGING ACTIVITIES AND UNLAWFUL CONDUCT

55.     Upon information and belief, Defendants have been marketing, distributing, offering for sale, and selling the Accused Products, consisting of apparel bearing the AEO Marks and AEO's copyrighted designs, without AEO's authorization.

56.     Upon information and belief, and based on AEO's examination of available samples of the Accused Products sold by Hamrick's, the Accused Products were counterfeit goods that were not ever authorized for sale by AEO.

57.     Upon information and belief, in the alternative, to the extent that any of the Accused Products may have been manufactured by third parties that also produce authorized genuine products for AEO, the Accused Products were nevertheless materially different from genuine AEO products because, *inter alia*, the Accused Products: are of inferior quality; were not ever approved for sale based on AEO's product integrity standards and quality control procedures; lack certain labeling components such as side seam labels, care and content labels, and other proprietary labels; incorporate incorrect color, fabric and labeling combinations that were not part of AEO's authorized genuine production; and/or are incorrectly marked to imitate products which would otherwise have been part of AEO's legitimate secondary market supply chain.

58.     Upon information and belief, Defendants' sale of Accused Products which are materially different from genuine AEO-branded apparel involved the improper addition, substitution, alteration, or removal of proprietary labeling components, which degrades the products' value, quality and appearance and significantly interferes with AEO's quality control programs by hindering Plaintiffs' abilities to trace and authenticate the products, thereby preventing

Plaintiffs from identifying counterfeits, resolving quality problems, addressing warranty claims, and/or recalling defective products.

59.     Upon information and belief, Defendants' sale of Accused Products which are materially different from genuine AEO-branded apparel involved Accused Products bearing the AEO Marks from which the proprietary labeling components have been removed or defaced are materially different from genuine AEO apparel that is authorized for sale by AEO, and such product is an infringement of AEO's rights in the AEO Marks. Removal or improper substitution of labels or information required to be present under United States statutes and regulations may cause such products to violate the United States statutes and regulations governing the labeling of garments and apparel products imported or offered for sale in the United States.

60.     Upon information and belief, Defendants do not own any federal or state registrations or trademark applications for any mark that includes, in whole or in part, AMERICAN EAGLE OUTFITTERS, AMERICAN EAGLE, AE, or an Eagle design, and Defendants cannot assert any rights in such marks that are prior to AEO's first use of the AEO Marks.

**A.     Sales of Accused Products by Hamrick's in Retail Stores**

61.     Defendant Hamrick's has advertised and sold the Accused Products in its retail stores, which are located throughout South Carolina, North Carolina, Georgia, Virginia and Tennessee.

62.     The Accused Products sold by Hamrick's are counterfeit and/or infringing products in the form of men's' hooded sweatshirts, men's' flannel shirts, ladies' hooded sweatshirts, and ladies' t-shirts, all of which are believed to bear counterfeit and/or unauthorized reproductions of one or more of the AEO Marks.

63.     Upon information and belief, the Accused Products advertised and sold by Hamrick's are counterfeit goods which are inferior in quality to genuine AEO products and lack

certain indicia of authenticity that would be expected on genuine products authorized for sale by AEO.

64.    Upon information and belief, in the alternative, the Accused Products advertised and sold by Hamrick's are materially different from genuine products which are authorized for sale by AEO.

65.    Upon information and belief, Hamrick's has sold at retail more than 10000 pieces of Accused Products, which sales have deceived and misled thousands of consumers, and which sales have resulted in tens of thousands dollars of unlawful proceeds to Hamrick's.

66.    Upon information and belief, prior to completing its sales of Accused Products, Hamrick's was informed that any closeout or overrun merchandise or apparel items which had been manufactured and authorized for sale by AEO as genuine AEO-branded products, would be available exclusively through AEO's designated third-party broker.

67.    Upon information and belief, prior to purchasing the Accused Products for resale to its retail consumers, Hamrick's was informed that at least one of the suppliers of the Accused Products had a history of selling counterfeit goods.

68.    Upon information and belief, Hamrick's acted with the deliberate intent to trade on the fame and goodwill that AEO has established in its AMERICAN EAGLE OUTFITTERS® Brand, and with the deliberate attempt to create a false impressions regarding the source and sponsorship of the Accused Products; or alternatively, Defendants have acted with willful blindness and with the intent to avoid learning of the infringing and unlawful nature of the Accused Products.

    **B.    Sales of Men's Flannels by Cavalier and Dahan**

69.    Upon information and belief, Defendants Cavalier and Dahan have advertised and sold counterfeit and/or infringing products to Hamrick's in the form of men's flannel shirts bearing unauthorized, infringing, or counterfeit versions of one or more of the AEO Marks.

70.    Defendants Cavalier and Dahan's advertising, sale and shipment of Accused Products to Hamrick's was without consent or authorization of AEO.

71.    Upon information and belief, the Accused Products advertised, sold and shipped to Hamrick's by Defendants Cavalier and Dahan are counterfeit goods which are inferior in quality to genuine AEO products and lack certain indicia of authenticity that would be expected on genuine products authorized for sale by AEO.

72.    Upon information and belief, in the alternative, the Accused Products advertised, sold and shipped to Hamrick's by Defendants Cavalier and Dahan are materially different from genuine products which are authorized for sale by AEO.

73.    Upon information and belief, Defendants Cavalier and Dahan sold and shipped at least 10000 pieces of Accused Products to Hamrick's, resulting in tens of thousands dollars of unlawful proceeds.

### C.    Sales of Men's Hooded Sweatshirts by DRNY and Mercurio

74.    Upon information and belief, Defendants DRNY and Mercurio have advertised and sold counterfeit and/or infringing products to Hamrick's in the form of men's hooded sweatshirts bearing unauthorized, infringing, or counterfeit versions of one or more of the AEO Marks.

75.    Defendants DRNY and Mercurio's advertising, sale and shipment of Accused Products to Hamrick's was without consent or authorization of AEO.

76.    Upon information and belief, the Accused Products advertised, sold and shipped to Hamrick's by Defendants DRNY and Mercurio are counterfeit goods which are inferior in quality to genuine AEO products and lack certain indicia of authenticity that would be expected on genuine products authorized for sale by AEO.

77.     Upon information and belief, in the alternative, the Accused Products advertised, sold and shipped to Hamrick's by Defendants DRNY and Mercurio are materially different from genuine products which are authorized for sale by AEO.

78.     Upon information and belief, Defendants DRNY and Mercurio sold and shipped at least 3000 pieces of Accused Products to Hamrick's, resulting in tens of thousands dollars of unlawful proceeds.

### D.      Sales of Ladies' T-Shirts by Jaylyn and Gilson

79.     Upon information and belief, Defendants Jaylyn and Gilson have advertised and sold counterfeit and/or infringing products to Hamrick's in the form of ladies' t-shirts bearing unauthorized, infringing, or counterfeit versions of one or more of the AEO Marks.

80.     Defendants Jaylyn and Gilson's advertising, sale and shipment of Accused Products to Hamrick's was without consent or authorization of AEO.

81.     Upon information and belief, the Accused Products advertised, sold and shipped to Hamrick's by Defendants Jaylyn and Gilson are counterfeit goods which are inferior in quality to genuine AEO products and lack certain indicia of authenticity that would be expected on genuine products authorized for sale by AEO.

82.     Upon information and belief, in the alternative, the Accused Products advertised, sold and shipped to Hamrick's by Defendants Jaylyn and Gilson are materially different from genuine products which are authorized for sale by AEO.

83.     Upon information and belief, Defendants Jaylyn and Gilson sold and shipped at least 900 pieces of Accused Products to Hamrick's, resulting in thousands dollars of unlawful proceeds.

### E.      Sales of Ladies' Sweatshirts by Deals, Weisman and Berliner

84.     Upon information and belief, Defendants Deals, Weisman and Berliner have advertised and sold counterfeit and/or infringing products to Hamrick's in the form of ladies'

hooded sweatshirts bearing unauthorized, infringing, or counterfeit versions of one or more of the AEO Marks.

85.    Defendants Deals, Weisman and Berliner's advertising, sale and shipment of Accused Products to Hamrick's was without consent or authorization of AEO.

86.    Upon information and belief, the Accused Products advertised, sold and shipped to Hamrick's by Deals, Weisman and Berliner are counterfeit goods which are inferior in quality to genuine AEO products and lack certain indicia of authenticity that would be expected on genuine products authorized for sale by AEO.

87.    Upon information and belief, in the alternative, the Accused Products advertised, sold and shipped to Hamrick's by Defendants Deals, Weisman and Berliner are materially different from genuine products which are authorized for sale by AEO.

88.    Upon information and belief, Defendants Deals, Weisman and Berliner sold and shipped at least 600 pieces of Accused Products to Hamrick's, resulting in several thousand dollars of proceeds.

89.    Upon information and belief, Defendants Deals, Weisman and/or Berliner also advertised, offered for sale, and/or sold several hundred more pieces of Accused Products to parties other than Hamrick's, the exact identity of which is not presently known, and such remaining Accused Products are believed to still be in commercial circulation and presently unrestrained.

## III.    HARM ARISING FROM DEFENDANTS' SALE OF ACCUSED PRODUCTS

90.    Defendants' unlawful actions commenced many years after AEO began using the AEO Marks, many years after the AEO Marks had achieved worldwide fame, and many years after AEO registered the AEO Marks with the USPTO.

91.    Upon information and belief, in addition to the constructive notice provided by AEO's registration of the AEO Marks with the USPTO, each of Defendants' had actual notice of AEO's ownership of and exclusive rights in and to the AEO Marks.

92.    Upon information and belief, the offering for sale and sale of Defendants' Accused Products is likely to cause confusion or misunderstanding as to the source, sponsorship, approval or certification of Defendant's Accused Products; is likely to cause confusion or misunderstanding as to affiliation, connection or association of the Accused Products with AEO; and misrepresents that Defendants' Accused Products have sponsorship, approval, or qualities that the Accused Products do not have.

93.    Upon information and belief, Defendants' sale of Accused Products have caused and are causing actual confusion among relevant consumers concerning the source, sponsorship, approval or certification of the Accused Products, by deceiving consumers to believe that the Accused Products are Plaintiffs' genuine AMERICAN EAGLE OUTFITTERS® brand products or are otherwise sponsored or endorsed by Plaintiffs.

94.    Upon information and belief, the likelihood of confusion, mistake, and deception resulting from Defendants' sales of Accused Products has and continues to cause irreparable harm to AEO's goodwill.  Purchasers and prospective purchasers viewing Defendants' Accused Products and perceiving a defect, lack of quality, or any impropriety are likely to mistakenly attribute these negative perceptions to AEO.

95.    Upon information and belief, Defendants knowingly and willfully used AEO Marks and copyrighted Flying Eagle Design and sold the Accused Products Apparel with the deliberate intent to trade on the fame and goodwill that AEO has established in its AMERICAN EAGLE OUTFITTERS® Brand, and with the deliberate attempt to create a false impressions regarding the source and sponsorship of Defendants' products and to dilute the distinctiveness of the AEO Mark;

or alternatively, Defendants have acted with willful blindness and with the intent to avoid learning of the infringing and unlawful nature of their conduct.

96.     If Defendants' conduct is not enjoined, it will greatly injure the value of the AEO Marks and AEO's copyright in its Flying Eagle Design, as well as diminish consumer's ability to distinguish authentic AEO goods in the marketplace.

97.     Plaintiffs have suffered actual monetary damage as a result of Defendants' conduct and actions as described herein, including lost sales, damage to commercial reputation, dilution of Plaintiffs' famous AEO Marks.

98.     Defendants' have been wrongfully and unjustly enriched through the unauthorized sale of counterfeit, infringing and dilutive products.

99.     Defendants' conduct and practices have also caused, and will continue to cause, irreparable harm for which there is no adequate remedy at law and for which Plaintiffs are entitled to injunctive relief and damages.

## CAUSES OF ACTION

### COUNT I
### (Trademark Counterfeiting, 15 U.S.C. § 1114(a), 1116(d) & 1117(b))

100.     Plaintiffs repeat and re-allege each and every allegation contained in the paragraphs 1-99 of this Complaint, and incorporate them herein by reference.

101.     Defendants, without authorization from Plaintiffs and in connection with their advertising, shipment and sale of the Accused Products, have used and are continuing to use spurious designations that are identical to or substantially indistinguishable from the AEO Marks.

102.     Defendants' importation, distribution, marketing, promotion, offering for sale, and/or sale of products bearing counterfeit copies of the AEO Marks is likely to cause confusion, mistake or deception as to the source or sponsorship of Defendants' Accused Products.  As a result

of Defendants' unauthorized use of spurious designations that are identical to or substantially indistinguishable from the AEO Marks, the public is likely to believe that Defendants' goods have been manufactured, sponsored and/or approved by AEO.

103.    Upon information and belief, Defendants' infringement of AEO's registered marks is willful, intended to reap the benefit of the goodwill of AEO, and violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), or alternatively, Defendants were aware of a high probability of, or purposefully contrived to avoid learning of, the counterfeit nature of the Accused Products, and acted with willful blindness of Plaintiffs' rights or with deliberate intention to unfairly benefit from the incalculable goodwill inherent in AEO Marks.

104.    Defendants' conduct is causing immediate and irreparable injury to AEO and to its goodwill and reputation, and will continue both to damage AEO and deceive the public unless enjoined by this Court.  AEO has no adequate remedy at law.

105.    Defendant' acts constitute trademark counterfeiting in violation of Sections 32, 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1114, 1116 & 1117.

106.    Upon information and belief, Defendants have made and may continue to make substantial profits and gains to which they are not in law or equity entitled.

107.    Upon information and belief, Defendants may continue their infringing acts, unless restrained by this Court. Defendants' acts have damaged and may continue to damage Plaintiffs, and Plaintiffs have no adequate remedy at law.

## COUNT II
### (Trademark Infringement, 15 U.S.C. § 1114(1)(a))

108.    Plaintiffs repeat and re-allege each and every allegation contained in the paragraphs 1-99 of this Complaint, and incorporate them herein by reference.

109.    Defendants, without authorization from Plaintiffs, have distributed, offered for sale and sold Accused Products bearing the AEO Marks.

110.    Upon information and belief, the foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion, mistake, and deception among consumers, the public, and the trade as to whether Defendants' Accused Products originate from, or are affiliated with, sponsored by, or endorsed by Plaintiffs.

111.    Defendants' unauthorized importation, distribution, marketing, promotion, offering for sale, and sale of products bearing the AEO Marks that are materially different from AEO's genuine goods, is likely to cause confusion, mistake or deception as to the source or sponsorship of Defendants' Accused Products.  As a result of Defendants' unauthorized use of AEO's federally registered marks, the public is likely to believe that Defendants' goods have been manufactured, sponsored and/or approved by AEO.

112.    Defendants' unauthorized importation, distribution, marketing, promotion, offering for sale, and sale of products bearing the AEO Marks that are materially different from AEO's genuine goods falsely represents Defendants' Accused Products as emanating from or being authorized or approved by AEO and places beyond AEO's control the quality of products bearing the AEO Marks.

113.    Upon information and belief, Defendants have acted with knowledge of Plaintiffs' ownership of the AEO Marks and with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill symbolized thereby.

114.    Defendants' acts constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a).

115.    Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

116.    Upon information and belief, Defendants may continue their infringing acts, unless restrained by this Court. Defendants' acts have damaged and may continue to damage Plaintiffs, and Plaintiffs have no adequate remedy at law.

## COUNT III
### (False Designation of Origin, 15 U.S.C. § 1125(a))

117.    Plaintiffs repeat and re-allege each and every allegation contained in the paragraphs 1-99 of this Complaint, and incorporate them herein by reference.

118.    By importing, distributing, marketing, promoting, offering for sale, and selling products bearing the AEO Marks that are materially different from genuine goods authorized for sale by AEO, Defendants are making false designations of origin and false descriptions or representations that Defendants' Accused Products are authorized by AEO, when in fact the Accused Products are not.

119.    As a result of Defendants' unauthorized use of the AEO Marks and/or imitations thereof, the public is likely to be misled and confused as to the source and quality of Defendants' goods.

120.    Defendants are passing off inferior quality goods as genuine AEO apparel.

121.    Defendants' conduct is willful, intended to reap the benefit of AEO's goodwill, and violates Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

122.    Defendants' aforesaid conduct is causing immediate and irreparable injury to AEO and to its goodwill and reputation, and will continue to both damage AEO and deceive the public unless enjoined by this Court.  AEO has no adequate remedy at law.

123.    Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

124.    Upon information and belief, Defendants may continue their infringing acts, unless restrained by this Court. Defendants' acts have damaged and may continue to damage Plaintiffs, and Plaintiffs have no adequate remedy at law.


### COUNT IV
### (Trademark Dilution, 15 U.S.C. § 1125(c))

125.    Plaintiffs repeat and re-allege each and every allegation contained in the paragraphs 1-99 of this Complaint, and incorporate them herein by reference.

126.    The AEO Marks are extraordinarily well-known throughout the United States, having been used exclusively and extensively for many years.  By reason of extensive advertising and use, the AEO Marks have become famous marks which are highly distinctive of Plaintiffs' goods and which are uniquely associated with AEO. The AEO Marks are strong and distinctive marks that have been in use for many years and have achieved enormous and widespread public recognition.

127.    The AEO Marks are famous within the meaning of Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)).

128.    Defendants' commercial use of the AEO Marks has diluted and continues to dilute the distinctive quality of that mark by lessening its capacity to identify and distinguish AEO exclusively as the source of goods bearing or provided under the marks.

129.    Defendants' commercial use of the AEO Marks further dilutes that mark by associating it with products of inferior quality, thereby tarnishing the AEO Marks.

130.    Defendants' unlawful use of the AEO Marks is intended to, and has the effect of, trading on AEO's reputation and causing dilution of the famous AEO Marks.

131.    Defendants' conduct is in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

132.    Defendants' aforesaid conduct is causing immediate and irreparable injury to AEO and to its goodwill and reputation, and will continue to both damage AEO and deceive the public unless enjoined by this Court.  AEO has no adequate remedy at law.

133.    Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

134.    Upon information and belief, Defendants may continue their infringing acts, unless restrained by this Court. Defendants' acts have damaged and may continue to damage Plaintiffs, and Plaintiffs have no adequate remedy at law.

### COUNT V
### (Copyright Infringement, 17 U.S.C. § 501)

135.    Plaintiffs repeat and re-allege each and every allegation contained in the paragraphs 1-99 of this Complaint, and incorporate them herein by reference.

136.    Upon information and belief, Defendants have reproduced, displayed, and distributed AEO's federally copyrighted Flying Eagle Design.  Defendants have engaged in these acts without any authorization from Plaintiffs.

137.    On information and belief, Defendants do not own any copyright interests in the Flying Eagle Design or any similar design or image.

138.    Defendants' acts violate Plaintiffs' exclusive rights under 17 U.S.C. §§ 106 and 113, and should be enjoined pursuant to 17 U.S.C. § 502, with awards to Plaintiffs of damages under 17 U.S.C. § 504 and reasonable attorneys' fees and costs under 17 U.S.C. § 505.

139.    Defendants' acts have caused and are causing Plaintiffs substantial damage, and will continue to damage Plaintiffs unless enjoined by this Court.  AEO has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against Defendants, jointly and severally, as follows:

(1)    Finding that Defendants have violated Section 32, 34 and 35 of the Lanham Act (15 U.S.C. §§ 1114, 1116 and 1117); Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)); and Section 501 of the Copyright Act of 1976 (17 U.S.C. § 501);

(2)    Granting an injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure and 15 U.S.C. § 1116 preliminarily and permanently restraining and enjoining Defendants, their officers, agents, employees, and attorneys, and all those persons or entities in active concert or participation with them from:

a)    manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, selling or otherwise trafficking in any products which bear  any of the AEO Marks, or any other mark or design element substantially similar or confusing thereto, including, without limitation, the Accused Products, and engaging in any other activity constituting an infringement of any of Plaintiffs' rights in the AEO Marks;

b)    engaging in any other activity constituting unfair competition with Plaintiffs, or acts and practices that deceive consumers, the public, and/or trade, including without limitation, the use of designations and design elements associated with Plaintiffs; and

c)    engaging in any other activity that will cause the distinctiveness of the AEO Marks to be diluted or tarnished.

(3)    Awarding Plaintiffs their actual damages, trebled pursuant to 15 U.S.C. § 1117(a) & (b), or, if Plaintiffs elect, statutory damages as the Court considers just, up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, pursuant to 15

U.S.C. § 1117(c), arising out of Defendants' acts of willful trademark infringement and counterfeiting.

(4)    Awarding Plaintiffs their actual damages, trebled pursuant to 15 U.S.C. § 1117(a), arising out of Defendants' willful acts of trademark dilution.

(5)    Awarding Plaintiffs their actual damages, or if Plaintiffs elect, statutory damages of up to $150,000 per copyright, pursuant to 17 U.S.C. § 504, arising out of Defendants' willful infringement of Plaintiffs' copyright interests in the Flying Eagle Design.

(6)    Awarding to Plaintiffs interest, including pre-judgment interest, on the foregoing sums.

(7)    Awarding to Plaintiffs their costs in this civil action, including reasonable attorneys' fees and expenses, pursuant to 15 U.S.C. § 1117(a) and (b) and 17 U.S.C. § 505.

(8)    Awarding Plaintiffs such other and further relief as the Court may deem just and proper.

## <u>TRIAL BY JURY IS REQUESTED</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs request a trial by jury of any issues so triable.

This the 22nd day of April 2015.

_/s/ Michael A. Cashman_____

Michael A. Cashman (Federal Bar No. 9937)

WOMBLE CARLYLE SANDRIDGE & RICE, LLP

550 South Main Street, Suite 400

Greenville, South Carolina 29601

*Of Counsel:*

Telephone:     (864) 255-5400

Facsimile:     (864) 255-5440

Charles A. Burke. (*pro hac vice* application pending)

mcashman@wcsr.com

Stephen F. Shaw  (*pro hac vice* application pending)

WOMBLE CARLYLE SANDRIDGE & RICE, LLP

One West Fourth Street

Winston-Salem, NC 27104

Telephone:     336-721-3584

Facsimile:     336-733-8429

cburke@wcsr.com

stshaw@wcsr.com

*Attorneys for Plaintiffs Retail Royalty Company and American Eagle Outfitters, Inc*